(No. 12526.—Decree affirmed.)
GEORGE M. SELLERS *et al.* Appellees, *vs.* W. W. RIKE *et al.*—
(EDWARD J. BRUNDAGE, Attorney General, Appellant.)

*Opinion filed April 21, 1920.*

1. DEEDS—*when presumption of delivery, raised by recording of a deed, is rebutted.* The recording of a deed by the grantors is *prima facie* evidence of delivery, but in every case the question of delivery depends upon the facts proved; and the presumption of delivery, raised by evidence that the deed was recorded by the grantors, is rebutted where the deed imposes a liability or obligation upon the grantee.

2. SAME—*a deed must be delivered to constitute a conveyance.* There must be a delivery of the deed by the grantor and an acceptance by the grantee to constitute a conveyance.

3. SAME—*when acceptance of deed is not presumed.* Acceptance will often be presumed where the deed is beneficial to the grantee, but where the deed imposes obligations without remuneration it is absolutely essential that the grantee shall accept it.

4. SAME—*what necessary to constitute acceptance of deed.* Acceptance implies an actual assent of the grantee not only to accept the benefits but also to be bound by the terms of the deed, and such assent must be expressed by the grantee to the grantor by words or positive acts.

5. SAME—*when reservation of life estate does not affect question of delivery.* The reservation of a life estate in a deed is evi-

dence of intention to make immediate delivery, and delivery to the life tenant is a good delivery to the remainder-man; but such presumptions of delivery are unavailing where the positive facts clearly establish that there was no delivery or intention to deliver the deed to the life tenant or to the remainder-man.

6. SAME—*when the rule in Shelley's case applies.* A deed to a grantee of an estate "during her natural life and at her death to her heirs, if any," conveys a fee simple title under the rule in *Shelley's case,* as the words "if any" are not sufficiently explanatory of the word "heirs" to cause it to be construed to mean "children."

7. SAME—*word "heirs" is presumed to have been used in technical sense.* Where an estate for life is granted with a remainder to the heirs of the life tenant there is a strong legal presumption that the word "heirs" is used in its technical sense, as denoting the whole of the indefinite line of inheritable succession.

8. TRUSTS—*trustee takes no title unless he accepts the trust.* In an express trust no title vests in the trustee unless he expressly or by implication accepts the trust or in some way assumes its duties and liabilities.

APPEAL from the Circuit Court of McLean county; the Hon. T. M. HARRIS, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and CLARENCE N. BOORD, for appellant.

LESLIE J. OWEN, W. W. WHITMORE, and BARRY & MORRISSEY, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is the second appeal in this case to this court. We refer to our former decision in this case for a statement of the facts necessary to that decision. (*Sellers* v. *Rike,* 272 Ill. 303.) Thereafter the cause was re-docketed in the circuit court of McLean county and Mary E. Bonnett was made a party defendant and filed her answer to the bill. W. W. Rike, Frank Hedrick and John C. Howard, trustees named in the deed of trust, Patrick J. Lucey, Attorney General of the State of Illinois, and Mary E. Bonnett, filed a cross-bill to correct an alleged mistake of the parties in

the description of a thirty-acre tract of the land described
in the deed of trust. The complainants in the original bill
and defendants in the cross-bill filed an answer to the cross-
bill, to which a replication was filed. On final hearing the
circuit court decreed that the cross-bill be dismissed for
want of equity. The court further found and decreed that
the purported deed of trust by George M. Sellers, Lizzie
R. Keys and husband, William M. Keys, and Mary E. Bon-
nett, to said trustees, of date May 31, 1900, was never de-
livered by the grantors to the trustees or any one of them
and is null and void, and that appellees are entitled to the
relief prayed by their bill; that George M. Sellers is the
owner in fee simple of said thirty-acre tract, the northeast
quarter of the southeast quarter of section 28, township 22,
north, range 4, east of the third principal meridian; that
he is the owner in fee simple of an undivided one-half of
block 133 and the strip adjoining it on the east, which was
the homestead property of Lizzie R. Keys prior to her
death; that he is also the owner of an undivided three-
fourths of all the remainder of the lands purporting to
have been conveyed by himself and Lizzie R. Keys and hus-
band, William M. Keys, by said trust deed, and that the
other appellees, who are the heirs of William M. Keys, de-
ceased, are the owners of the other undivided one-fourth
of the remainder of said lands and of an undivided one-
half of the homestead property of Lizzie R. Keys, now
deceased. The Attorney General has appealed, and appel-
lees have assigned cross-errors.

Appellant has assigned two errors on this appeal: (1)
The court erred in finding that there was no sufficient de-
livery and acceptance of the trust deed; and (2) in hold-
ing that the cross-complainants are not equitably entitled
to the correction of the description of the thirty-acre tract
of land incorrectly described in the trust deed. Appellees,
complainants in the original bill, have assigned as error
(1) the failure of the court to hold that the trust deed was

testamentary in character and therefore void; and (2) its failure to hold that by the deed made by George M. Sellers on July 17, 1883, Lizzie R. Sellers (now Lizzie R. Keys) acquired but a life estate in the land therein described, and that therefore she conveyed no interest therein by the trust deed to said trustees.

It was proved on the trial and stipulated that the trust deed was executed May 31, 1900; that Lizzie R. Keys died June 5, 1900; that the three trustees named in that deed never knew or heard of the execution of the deed, or that such a deed had been contemplated, until June 6, 1900; that they got their first information about the existence of said deed on the last date through the columns of a local newspaper published and distributed in LeRoy, the home of the grantors and grantees in the deed, which published substantially the contents of the deed, including the names of the grantors and grantees, and that none of said trustees prior to the beginning of this suit expressly accepted or rejected the trusteeship or consented or refused to act as such trustees. None of the trustees ever talked with any of the grantors in the deed about it prior to the suit. The trustees named in the deed are members, respectively, of the Methodist, Christian and Presbyterian churches of LeRoy, are required by the terms of the deed to perform the duties required of them without compensation, and shall establish, conduct and maintain on said property a home for dependent and homeless children, with full authority to receive, collect and sue for any money or property and loan the same to maintain the home, and shall report each year to the three churches, in a full and detailed account, all money and property in their hands and dispositions of the same, and make such reports oftener if required by the churches and under penalty of removal if they fail so to do.

One of the facts relied upon by appellant as tending to prove delivery of the deed to the trustees is that the deed was recorded. This court has many times decided that the

recording of a deed by the grantor is *prima facie* evidence of delivery. (*Sargent* v. *Roberts,* 265 Ill. 210.) In every case, however, the question of delivery depends upon the facts proved, and even when the deed is the only evidence produced, with evidence that it is recorded, such proof will not necessarily raise a presumption of delivery. Such a deed never raises such a presumption where by its terms it imposes a liability or obligation upon the grantee. (*Hill* v. *Kreiger,* 250 Ill. 408; *Littler* v. *City of Lincoln,* 106 id. 353.) By such a deed the presumption is rebutted, whether it is made between private parties or otherwise. (*Hillmer Co.* v. *Behr,* 264 Ill. 568.) The invariable rule in all cases is that there must be a delivery of the deed by the grantor and an acceptance by the grantee to constitute a conveyance. (*Hill* v. *Kreiger, supra.*) While acceptance will often be' presumed where the deed is beneficial to the grantee, yet where the deed imposes obligations, and without remuneration, it is absolutely essential that the grantee shall accept it, and the burden is upon him to prove acceptance. The proof is positive in this case that there was no such acceptance by or delivery to the trustees or to any of them. The proof is that one of the grantors was dead before the grantees ever heard of the deed, and that the subject of the deed was never discussed between them and the other grantors prior to the suit. Acceptance implies an actual assent of the grantee not only to accept the benefits but also to be bound by the terms of the deed, and such assent must be expressed by the grantee to the grantor by words or positive acts on his part indicating such acceptance.

The deed of trust was found in the bank box of William M. Keys after his death, which occurred in August, 1909 or 1910. Appellant relies mainly on this fact, and the assumption that there was a delivery to William M. Keys of the trust deed, to establish delivery to and acceptance by the trustees or grantees. He relies particularly upon the following principles and authorities: The reservation

of a life estate in a deed is evidence of intention to make immediate delivery, as otherwise the reservation would be of no effect. (*Blake* v. *Ogden,* 223 Ill. 204; *Prince* v. *Prince,* 258 id. 304; *Sargent* v. *Roberts, supra; Baker* v. *Hall,* 214 Ill. 364; *Riegel* v. *Riegel,* 243 id. 626.) A delivery to a life tenant or person having a life interest in the property conveyed is a good delivery to the remainder-man. (*Chapin* v. *Nott,* 203 Ill. 341; *Baker* v. *Hall, supra; Riegel* v. *Riegel, supra.*) The foregoing principles are well established and cannot be questioned in this case, but all such presumptions are unavailable to the grantee where the positive facts are all one way and establish clearly that there was no delivery or intention to deliver the deed to the life tenant or to the remainder-man.

The farm lands deeded to the trustees by George M. Sellers and his daughter, Lizzie R. Keys, were owned by them as tenants in common in equal shares. Lizzie R. Keys obtained title to nearly all of the farm lands by the deed from her father dated July 17, 1883. In the trust deed George M. Sellers reserved a life estate to himself and to his daughter and her husband, and his daughter reserved a life estate to herself and her husband and her father, and the trustees were not to come into possession of the lands, or of the rents of the same, until the death of the last survivor of the three. Mary E. Bonnett was a sister of the wife of George M. Sellers, said wife having died years before the making of the trust deed. Lizzie R. Keys was an invalid, and the three grantors all lived together in the house on the tract heretofore referred to as the homestead property of Lizzie R. Keys, George M. Sellers being a widower. The trust deed was drawn by an attorney and notary public, John A. Sterling, at the request of Sellers and at said house. After Sterling had taken their acknowledgments he suggested to Sellers that they ought to pay for the revenue stamps and the recording fee, as the deed conferred no beneficial interest upon the trustees themselves, to

which assent was given by the grantors. Sterling then told Sellers that he would take the deed to Bloomington and have it stamped and recorded, and no objection or protest was made to his having it stamped and recorded. Sterling also told the grantors distinctly that the deed would have to be delivered to one or the other of the trustees before it would take effect, and also told Sellers he could deliver it to the trustees after it came back to him. This is positively all that was said on that occasion upon the question of delivery or at any time thereafter by the grantors. Three other persons testified on this subject: George M. Sellers, Mary E. Bonnett and Miss Mary West, the last named having lived there with the family a good many years and was twenty-six years old when she testified in this case. Miss Bonnett and Miss West were hostile witnesses against Sellers and the other parties complainant to his bill. They both corroborate Sterling and Sellers in their testimony that there was nothing further said upon the question of delivery of the deed other than testified to by Sterling. They contradict Sterling and Sellers upon some points in their testimony with reference to what Sellers said about the binding effect of the deed, the two women in substance testifying that when Sterling took the acknowledgment of the deed he held it up and said to them, "This deed will always stand; I will take it to Bloomington and have it recorded." Miss Bonnett testified that there was no reply by any of the grantors and that that statement was made by Sterling. Sellers did testify positively that he never delivered that deed to anyone and that he did not know how it got out of his possession, and there is nothing in the record contradictory of his statement except the bare fact that the deed was found in the box of William M. Keys, one of the grantors, after his death. The testimony further shows that after the deed was recorded and after the death of Mrs. Keys, Sellers continued to live at the homestead with Keys until they had a misunderstanding some six

months later, and that Miss Bonnett continued to live with Sellers at the homestead until she and Sellers also had a misunderstanding. The evidence clearly shows that Keys must have taken possession of this deed and placed it in his box at the bank without any knowledge or consent of Sellers. It is also equally clear that Mrs. Keys never delivered or directed a delivery of this deed to her husband or to the trustees and that Miss Bonnett did not do so. Miss West positively testified that Mrs. Keys was a very sick woman when the deed was executed, and that she was absolutely unable to talk at the time it was executed and died five days later. The deed is indorsed by the recorder, and his certificate thereon shows that it was filed for record June 2, 1900, at 4:35 o'clock P. M. Mrs. Keys' death occurred June 5, 1900, and while it does not definitely appear when the deed was returned from the recorder's office, it is quite clear that Mrs. Keys never saw it after its execution and made no direction as to its delivery, and no other suggestion was made for delivery by any of the grantors, or by anyone in their presence, except the one made by Sterling, and that suggestion was not carried out. There was no delivery of the deed either to the life tenant, Keys, or to any one of the trustees, and Keys' possession of the same was without authority of any grantor other than himself. In an express trust no title vests in the trustee unless he expressly or by implication accepts the trust or in some way assumes its duties and liabilities. *McFall* v. *Kirkpatrick*, 236 Ill. 281.

George M. Sellers and the heirs of William M. Keys, appellees, are all represented in this appeal by the same counsel. There is no intimation in their brief and argument that there was any intention by Sellers to contend, as against the heirs of William M. Keys, that Lizzie R. Keys acquired but a life estate in the farm lands under the second assignment of cross-errors. We take it that this assignment was to be insisted on only as against the trustees.

The deed of George M. Sellers to Lizzie R. Sellers (afterwards the wife of William M. Keys) was to her "during her natural life, and at her death to her heirs, if any." We think it is clear that the grantee in this deed took a fee simple title under the rule in *Shelley's case,* which is an absolute rule of law that overrides the intention of a testator in a will or a grantor in a deed. Under that rule, if an estate for life is granted by any instrument and in the same instrument a remainder is limited, either mediately or immediately, to the heirs of the life tenant, the life tenant takes the remainder as well as the life estate; and there is always a strong legal presumption that the word "heirs" is used in its technical sense, as denoting the whole of the indefinite line of inheritable succession. (*Carpenter* v. *Hubbard,* 263 Ill. 571.) The only ground for contention that a life estate, only, is granted by this deed is the simple fact that the word "heirs" in the clause above quoted is followed by the words "if any." There are no other words used in the deed explanatory of the word "heirs," and we are not disposed to hold that the word "heirs" meant children simply by reason of the addition of the words "if any," and particularly in view of the further fact that George M. Sellers, the grantor, paid one-half of the rent to William M. Keys for the land so conveyed up to the time of his death and never questioned the fact that he had conveyed to his daughter the fee simple title to said land. His interpretation of the deed shows his actual intent in making the deed, and we do not think that his actual intent is any way different from the legal intent that he is presumed to have had under said rule of law.

In view of the conclusion at which we have arrived under the assignments of error already considered, it is not necessary to consider the other errors assigned by the parties.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*