(No. 20051.— )

ARMENIA P. HEGÉ, Appellant, *vs.* THE PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA *et al.* Appellees.

*Opinion filed October 25, 1930—Rehearing denied Dec. 4, 1930.*

W. C. DeWolf, for appellant.

Concannon & Dillon, and Alexander J. Strom, for appellees.

Mr. Commissioner Edmunds reported this opinion:

On October 4, 1929, Armenia P. Hegé, appellant, filed in the circuit court of Boone county a bill to construe the will of her grandmother, Armenia P. Jones, who died in 1886. The Provident Mutual Life Insurance Company of Philadelphia, Helen Jones, individually and as executrix of the estate of John P. Brimmer Jones, deceased, and Frank Storz, appellees, were made parties defendant. Demurrers were sustained to the bill as subsequently amended and the court dismissed it for want of equity. The cause has been brought here by appeal.

The bill as amended alleges that appellant is the daughter of John P. Brimmer Jones, now deceased, that he was the son of Armenia P. Jones, now deceased, and that the latter, at the time of her decease a resident of Winnebago county, Illinois, left a will and testament, the second paragraph of which provided as follows:

"*Second*—I give, devise and bequeath to my son John P. Brimmer Jones, the use, income, occupancy and produce of my farm known as the Newburg farm (which he now

occupies and holds by lease from me during my life at four hundred dollars per annum) for and during the term of his natural life, with the remainder and reversion of said farm to his heirs in fee, upon the condition to him and his heirs that from said farm there shall be paid annually to Mary A. Fisher, my daughter, two hundred dollars per annum during her life and to her surviving children after her death while the youngest is under twenty-one years of age, when at said youngest being twenty-one years old, there shall be paid to her surviving children the sum of four thousand dollars; or in case said four thousand dollars is not paid as aforesaid, then her said surviving children, if any there be, shall be entitled to the undivided half of said farm in fee; but if she leaves no children, then the reversion shall go to the heirs of my son J. P. Brimmer Jones, as aforesaid; but it shall be optional with said J. P. Brimmer Jones, if living at the time or with his children, if he be dead, to pay said four thousand dollars as aforesaid, or to convey or release the undivided one-half of the farm as aforesaid; and as I have leased said farm to my son J. P. Brimmer, as aforesaid, and have also agreed to pay him twenty-five hundred dollars towards building him a house, the said annuity to said Mary A. Fisher, or her children, shall not begin to run, or be payable by him or them until such time as the rent aforesaid at four hundred a year, if continued, shall have paid said twenty-five hundred dollars."

The bill further alleges that at the time of her death the testatrix was the owner of the Newburg farm referred to in the will and left her surviving her son, John P. Brimmer Jones, and her daughter, Mary A. Fisher, her only children; that Mary lived, at the time of making the will, but a short distance from her mother; that Mary died in 1900 and left her surviving no child or children or descendants of any such but left surviving her husband, who has since departed this life and with whom she lived until her death; that at the time testatrix made the aforesaid will

her son, John, was married and living with his wife, and they had one son then living, Howard Jones, who died in 1896 at the age of fifteen years; that at the time testatrix made the will John resided on a farm only a few miles from his mother; that testatrix then well knew of the existence of Howard and was very fond of him; that Howard and appellant were the only children born to John; that the name of appellant's mother was Alvira H. Jones; that John was divorced from appellant's mother in 1921; that on November 23, 1921, appellant's mother conveyed by deed to John all interest which she then held in the farm, which interest was only that accruing to her as the then wife of John; that John afterwards married appellee Helen Jones; that John, claiming under the provisions of said will to be the owner in fee of the farm, mortgaged it to the Provident Mutual Life Insurance Company of Philadelphia for $15,000; that John died testate on June 4, 1929, willing all of his property to his second wife, Helen Jones, and that appellant's mother died intestate in 1927, leaving appellant as her only surviving heir. The bill prays for a construction of the will, and that upon construction appellant be decreed to be the owner in fee of the property and the mortgage removed as a cloud upon her title.

The position taken by appellees is, that through operation of the rule in *Shelley's case* John P. B. Jones took title in fee to the farm, subject only to certain conditions which have long since been performed. Appellant contends that the rule in *Shelley's case* cannot be held operative here; that John took only a life estate, and that title in fee to the farm is vested in her.

The rule in *Shelley's case* is firmly established in this State as a rule of property. (*DuBois* v. *Judy*, 291 Ill. 340.) In *Winter* v. *Dibble*, 251 Ill. 200, this court quoted Coke's expression of the rule, that "when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or

immediately, to his heirs in fee or in tail, that always in such cases 'the heirs' are words of limitation of the estate and not words of purchase." We said in that case that this is a rule of law and not of construction; that the use of the word "heirs," unless it clearly appears from the instrument to have been used in a sense different from its strict legal meaning, is conclusive of the intention; that no declaration, however positive, that the ancestor shall be tenant for life and no longer, and shall have no power to sell or dispose of the premises or any part of them or to defeat the intention of the testator, will prevent the application of the rule, and if a testator has used technical language which brings the case within the rule, a declaration, however positive, that the rule shall not apply, or that the estate of the ancestor shall not continue beyond the primary express limitation, or that his heirs shall take by purchase and not by descent, will be unavailing to exclude the rule and cannot affect the result. It was pointed out, however, that whenever it is made to appear by the language of the instrument that the words of inheritance were not used according to their legal import, to include the whole line of inheritable blood of the ancestor and to make him the stock of descent, but have been used in a restrictive and untechnical sense, to designate individuals to whom a distinct estate is given and from whom, as its origin, the descent is thereafter to be derived, the rule will be excluded. In this connection we granted the possibility of a testator's using the word "heirs" in the sense of children, and stated that if the word clearly appears to have been so used the rule will not apply, because it then appears that the word was not used to describe the estate granted but the persons who should take the estate. Before this decision we had often called attention to the principle enunciated therein that technical words will be presumed to have been employed in their ordinary legal sense. In *Ætna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406, we quoted with approval the following lan-

guage of Lord Denman in *Doe* v. *Gallini,* 5 B. & Ad. 621:
"Technical words, or words of known legal import, must
have their legal effect even though the testator uses incon-
sistent words, unless these inconsistent words are of such
a nature as to make it perfectly clear that the testator did
not mean to use the technical words in their proper sense."
Among the cases in which these several principles dealing
with the application of the rule in *Shelley's case* have been
subsequently recognized and applied are *Carpenter* v. *Hub-
bard,* 263 Ill. 571, *Haight* v. *Royce,* 274 id. 162, *DuBois* v.
*Judy, supra, Sellers* v. *Rike,* 292 Ill. 468, *Peacock* v. *Mc-
Cluskey,* 296 id. 87, *Hollenbaugh* v. *Smith,* 296 id. 558,
*Pool* v. *Pool,* 300 id. 557, *Kaup* v. *Weathers,* 302 id. 569,
and *Meeker* v. *Steepleton,* 309 id. 337.

Unless, therefore, it can be said that the presumption
that the word "heirs" as employed in connection with the
devise to John P. B. Jones was used in its ordinary legal
sense is overcome by other controlling words which clearly
show an intention to employ it in some other sense, the
rule in *Shelley's case* applies and John must be held to
have taken title to the farm in fee. In meeting the situation
appellant points to the fact that the paragraph under con-
sideration imposed conditions requiring the estate to be kept
intact until the youngest "child" of Mary reached the age
of twenty-one years, contending that by using the term
"heirs" in the devise to John, and in connection with these
conditions, the testatrix was not describing the extent or
quality of the estate taken by John but was merely desig-
nating certain individuals or a class of individuals upon
whom she was imposing obligations to be performed upon
the happening of certain events or at certain periods. In
support of this contention appellant argues that the testa-
trix did not intend to give to either her son or daughter
any interest in the ownership or fee of the farm until the
youngest child of Mary should attain the age of twenty-
one years, (unless Mary should die before then, leaving no

child surviving,) until which time Mary was to have half the rental and nothing more and John was to have the use of the premises but nothing more; that it thus clearly appears that the chief concern of testatrix was to provide for her grandchildren who were in being when Mary's youngest child should attain the age of twenty-one years; that when testatrix used the term "heirs" she meant "children," as evidenced by the fact that she used "heirs" in granting to John, who in fact then had a child, and used "children" in connection with her daughter, who in fact then had no children; that the use of the term "heirs" in the sense of "children" is conclusively indicated by the clause giving John or his "children" the option to pay the $4000 or convey an undivided one-half of the farm; that all the provisions of the paragraph are absolutely inconsistent with the intention to vest title in John at the time of the death of testatrix, or with the thought that the word "heirs," as used in connection with John's name, vested in him an absolute estate in fee simple, and that in all probability testatrix never heard of the rule in *Shelley's case* and never heard of a technical meaning being given to the word "heirs."

A number of considerations militate against a construction which would lead to the conclusion contended for by appellant:

(1) By the provision that "the reversion shall go to the heirs of my son, J. P. Brimmer Jones, as aforesaid," the contingency of Mary's death leaving no surviving child was carefully met. That the testatrix had such contingency in mind is thereby demonstrated. If she had it in mind as to Mary it is properly arguable that she naturally had it in mind as to John, and if she intended by the word "heirs" to designate the "children" only of John, the possibility of his death leaving no surviving "child" would have presented itself to her and would have been provided for. The failure to make a substitutional gift of the remainder devised to the "heirs" of John in case he died leav-

ing no surviving child or "heirs," negatives the idea that she meant to devise only to the children of John, and indicates that she meant to dispose of the remainder to all possible persons who would take in succession under the description of "heirs" of John. Under appellant's theory, if John had died leaving no child surviving the remainder would have lapsed, and testatrix, as to such remainder interest, would have died intestate. Any reasonable construction of a will will be adopted rather than to hold that the testator intended to die intestate as to any of his property. *Wells* v. *Dalies,* 318 Ill. 301.

(2) The clause in which the word "children" (referring to those of John) appears is not one of gift. Where testatrix made a gift she used the term "heirs," and "children" as used in connection with John occurs only in the option clause. Neither the context nor the surrounding circumstances afford sufficient reason for saying that in thus using the term "children" the testatrix thereby intended to limit, restrict or cut down the gift elsewhere made in appropriate terms possessed of a settled legal meaning.

(3) Under the assumption that by the "heirs" of John the testatrix meant his "children," and assuming further that John and his "children" should die before Mary or before her youngest child became twenty-one years old, the clause would make no provision for paying to Mary the $200 per year during her life and until her youngest child became twenty-one years old, or for the contingency that would arise if John and his children should be dead when the time came to exercise the option of conveyance or payment of the $4000. The apparent general purpose of the will is such that the testatrix cannot with good reason be held to have so intended. Rather does her purpose seem to have been to dispose of the property in such a manner as to insure its being at all times in hands that would be subject to the specific conditions imposed.

(4) Although under appellant's theory John was given only a life estate in the farm, he stood to be called upon to execute to others a conveyance of an interest in fee. Appellant suggests that by the clause in question testatrix conferred upon him a power of appointment under which this was to be done. By merely giving the ordinary meaning to the term "heirs" the apparent intent of the testatrix is met without necessity for seeking in other language a power of appointment, and it may fairly be said that the clause does not express such a clear intention to arrive at the desired result through the medium of the exercise of such a power as to warrant acceptance of the suggestion.

(5) When the testatrix made provision for her daughter's children she used the term "children." If she meant to specify that only her son's children should take, why did she not use the same direct and definite language in making the gift? The difference in phraseology legitimately suggests a difference in thought and intention.

Appellant earnestly contends that the intention of testatrix cannot be carried out unless the "children" of John be allowed to exercise the option, and that any construction of the will arriving at a result which would do violence to the intention thus indicated cannot be defended. In so far as this contention means that testatrix must be held to have meant "children" wherever she elsewhere said "heirs," it is outweighed by the five considerations set out above and by the further consideration that the use of "children" in the place in question is readily explainable in the knowledge that John had a living child, and that the testatrix naturally thought of the election to convey or pay being made in the lifetime of such child. To adopt the words of this court in *Silva* v. *Hopkinson*, 158 Ill. 386, the fact that the word "children" was used in that place "falls far short of making it clear that the testatrix used the word 'heirs' in other than its legal sense." We would not be warranted in holding

that the presumption that it was so used has been overcome. In so far as the contention means that no construction of a will can be adopted the result of which is to thwart the intention of the testator, it is answered by saying that where words are employed which bring a case within the purview of the rule in *Shelley's case*, that rule, as an inflexible rule of law, becomes operative even though the result be contrary to what the testator intended.

Appellant also contends that in order that the rule in *Shelley's case* may apply, the word "heirs" must mean "heirs" under the laws of descent, and when any limitation or condition is attached to the word "heirs" by which it does not mean "heirs" under the laws of descent, then the rule in *Shelley's case* does not apply. In the present case the condition is not attached to the word "heirs," alone. After devising the farm to John P. B. Jones for life with the remainder and reversion to the heirs in fee, the will further provides that such devise is "upon the condition to him and his heirs," etc. Whatever might be the merit of appellant's contention under other circumstances, it cannot be maintained here. The property devised to the testatrix's son was the Newburg farm, on the condition that he pay annually to his sister, the testatrix's daughter, Mary A. Fisher, (the two being the only heirs of the testatrix,) the annual sum of $200, which was one-half of the $400 rent which the son was paying. The estate devised was a life estate in the farm, and the remainder was given by the same instrument directly to the heirs as heirs. This brought the devise under the rule, and the estate conveyed was a fee to the first taker, subject to the conditions annexed to it by the terms of the will.

The decree of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*